UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*PD*

*19* *4242*

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 46 Bellevue Terrace, Collingwood, NJ 08108

Address of Defendant: 1455 Market St, San Francisco, CA

Place of Accident, Incident or Transaction: Philadelphia, New Jersey, Delaware

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/13/2019

*Reina Smith*
Must sign here
_____    _____
Attorney-at-Law / Pro Se Plaintiff    Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A.    *Federal Question Cases:***

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases    *FLSA*
    *(Please specify):* _____

**B.    *Diversity Jurisdiction Cases:***

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, *Reina Smith*, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: 9/13/2019

*Reina Smith*
Sign here if applicable
_____    _____
Attorney-at-Law / Pro Se Plaintiff    Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

PD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

*Reinard Smith*                          :          CIVIL ACTION
                          v.          :
*Uber Tech. Inc., et al*          :          NO. 19   4242

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (✓)

9/13/2019          Reind Smith
**Date**                    **Attorney-at-law**                    **Attorney for**

609 222-5179                                        rsmit162@student.ccp.edu
**Telephone**          **FAX Number**          **E-Mail Address**

(Civ. 660) 10/02

PD

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
# DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Reinard Smith | : | CIVIL DIVISION |
| Plaintiff, | : | |
| | | |
| vs. | : | |
| | | |
| Dara Khosrowshahi, Travis Kalanick, | : | |
| Garrett Camp, Barney Harford, and | : | Docket No: **19    4242** |
| Uber Technologies, Inc. | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |

## COMPLAINT

Reinard Smith

Plaintiff   Pro se

46 Bellevue Terrace

Collingswood, NJ 08108

rsmit162@student.ccp.edu

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Reinard Smith | : | **CIVIL DIVISION** |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| Dara Khosrowshahi, Travis Kalanick, | : | |
| Garrett Camp, and Uber Technologies, | : | Docket No: __19__    __4242__ |
| Inc. | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW, come the Plaintiff, Reinard Smith, *in propria persona*, by and on his own behalf and files the following Complaint in Civil Action whereof the following is a statement:

## I. INTRODUCTION

This is a civil action brought on behalf of Plaintiff, Reinard Smith who has been misclassified as an independent contractors as to my work status, and my work performed for Uber Technologies, Inc. and for wrongful termination, failure to reimburse expenses as an employer, such as for the maintenance and other necessities needed to operate and complete assignments dispatched from Uber Technologies, Inc. as well as for unpaid overtime compensations and incorrect fare amounts deducted due to misclassification and non-negotiated pay rates, loss of employee benefits and also; deprivation of workers compensation, contributions to my state and federal tax accounts including my retirement account with social security administration, medical benefits as an employer contribution paid medical leave and accommodation

rights, whistle blower protections against retaliation, anti-discrimination and anti-harassment protections, denial of the right to accrue vacation time and, sick time or paid time off, possibility of a 401(k) plan with an employer matching contribution, eligible short-term or long term disability plan, continuing medical coverage in event of separation from employment, an itemized paycheck, the right to have regular payroll payments excluding late payroll payment penalties, work liability protections; and I also allege wrongful termination.

## II. JURISDICTION

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and §1367.

2.    This Court also has jurisdiction over the matter pursuant to 29 U.S.C. § 216

3.    This Court also has jurisdiction over the matter pursuant to 29 U.S.C. §§ 207, 215(a)(3)

4.    This Court has jurisdiction over the matter also pursuant to Pennsylvania Minimum Wage Act of 1968 Act 5; 34 Pa. Code Section 231, also the Pennsylvania Wage Payment and Collection Law 1961 Act 329, 43 P.S. § 260.1.

## III. VENUE

4.    Venue is proper in this district under 28 U.S.C. 1391(a) because a substantial part of the events giving rise to Plaintiffs' claims occurred within this district.

## IV. PARTIES

5.    Plaintiff Reinard Smith is now an adult resident of Collingswood, New Jersey, where I use to be a resident of Pennsylvania when I started working as an Uber driver.

6.    Uber Technologies, Inc. is a Technology Networking Company head quartered at 1455 Market St., San Francisco, CA 94103

7.    Defendant Dara Khosrowshahi is an adult natural person who is the CEO of Uber Technologies,

Inc. He also sits as the Director and as a Board member. At this time his residence is unknown.

8.      Defendant Travis Kalanick is an adult resident of San Francisco, California. At one time he was the CEO of Uber Technologies, Inc. He also sits as a member of the Board for Uber Technologies, Inc. also is the original founder.

9.      Defendant Garrett Camp is an adult resident of San Francisco, California. He is Co-founder of Uber Technologies, Inc. and is also Chairman of the Board for the company.

## V. **BACKGROUND FACTS**

10.      Uber Technologies, Inc. (Uber) defines itself as a technology company, however, Uber provides taxi like services through its mobile app which connects those who need rides with drivers of the Uber brand and are active. Uber authorizes its drivers to perform services State to State multi-jurisdictional.

11.      Uber requires that those interested in becoming an Uber partner/driver submit the necessary documents two which are a valid driver license and car insurance in the drivers name. A limousine or taxicab license is not required to become an Uber driving partner. I signed up with Uber in June 2017.

12.      Uber prohibits driver partners from picking up riders outside of the Uber app while it is active and, also prohibits driver partners from allowing family or friends to ride along when the Uber app is active.

13.      Uber controls the route you take when arriving at your pick up destination and when dropping off at your passengers drop off destination.

14.      If this driver refuses too many ride request Uber counts those refusals against a driver's ratings and either Uber will deactivate you or, stop a driver from accepting rides in a certain area.

15.      Uber also controls a driver's account in the driver app and has temporarily deactivated this driver's account suspending my access to the funds I previously had earned and my future earnings.

16.     Uber does not require any kind of commercial licensing from its drivers who do UberX ride-share trips, all Uber's successful applicants can begin to accept ride request just by using the Uber app.

17.     Uber provides car service in cities throughout the country via an on demand dispatch system available via a mobile phone. However, under the rubric of an independent contractor my mobile app was deactivated yet, Uber deactivation was a wrongful termination where Uber purposely hid the fact that I was an employee who was protected under contract and not an independent contractor.

18.     Moreover, Uber primary function is to provide car services to customers, and such is what this Uber driver did by a technologically developed app that Uber controls riders request with. This drivers' functions are completely intertwined with Uber's business which could not operate without it's drivers.

19.     Regardless of Uber's application of the term "independent contractors" as an UberX driver my present capacity is employee. There are various requirements which Uber uses to regulate their UberX drivers, like the grading system that is in place, access to account and cash out features, routes which Uber suggest are best, as well as other requirements which must be followed so that Uber does not curtail this drivers' use of the app.

20.     Consequently, the fare rate is also established by Uber and is not negotiated between the rider and the Uber driver thus Uber handles the finances of the transaction and the driver handles the laborious/ or service side of the transaction.

21.     Uber's misclassification of this UberX driver is intentional, where Uber is aware this driver does not possess a limousine or taxi license and Uber hasn't made it a requirement to obtain one. How Uber does not bring attention to this fact tells me they understands they make ride-sharing possible for this Uber driver through use of the Uber app. Uber remains silent on this point.

22.     As a result of Ubers' misclassification my being an UberX driver forced me to bear the cost of

the vehicle up keep, took away employee benefits and protections, denied me rights under the false premise that I was an independent contractor, also made me give Uber a non-negotiated percentage of my fare. Under Pennsylvania law employers are to pay for employee job related expenses.

23.     Former CEO and current Board Member Travis Kalanick was one of the original founders of Uber Technologies, Inc. Defendant Kalanick knowingly advised Uber, for money or other valuable consideration, to classify its drivers as independent contractors in order to avoid employee status and should therefore be held jointly and severally liable with Uber for all violations alleged herein.

24.     Chairman of the Board, Garrett Camp, originated the idea for Uber and was one of the original founders of Uber Technologies, Inc. Defendant Camp likewise knowingly advised Uber, for money or other valuable consideration, to classify its drivers as independent contractors in order to avoid employee status and should therefore be held jointly and severally liable with Uber for all violations alleged herein.

25.     New CEO, Dara Khosrowshahi, still follows the independent contractor misclassification model and presently oversees the company and its primary functions allowing the incorrect status to go unchanged to avoid employee status knowingly, for money or other valuable consideration and should therefore be held jointly and severally liable with Uber for all violations alleged herein.

26.     Defendants Khosrowshahi, Kalanick, and Camp continue to advise and promote UberX drivers as independent contractors even after Pennsylvania case law **Lowman v. UC Board of Review,** No. 686 C.D. 2016, Argued: (May 3, 2017) and its' dissenting opinion made clear that Uber drivers without limousine and taxicab licenses cannot be considered independent contractors. I was deactivated June 2018, after my annual review, and for not meeting, Uber's new driver requirements.

27.     The Unemployment Compensation Center Referee found that I provided services to Uber as an employee after a hearing held on November 21, 2018 at 9:15 am in Philadelphia, Pennsylvania in which

he concluded that competent evidence was submitted which showed by contract of service and in fact I wasn't free from Uber's control and neither did I engage in an independent business, trade, occupation, or profession. Also the IRS determined that I performed services for Uber as an employee to. **Exhibit A**

28.    There was likewise a determination by the Unemployment Compensation Board of Review which as well established that I was an employee for Uber, this determination was not challenged by Uber therefore I was really a transportation worker and so, Uber' arbitration clause is not applicable. **Exhibit B**

29.    Upon information and belief, Defendants do knowingly advise and promote for money and other valuable consideration the status of independent contractor in order to avoid employee status and should therefore be held jointly and severally liable with Uber for all violations alleged herein.

## COUNT I.
## FAIR LABOR STANDARDS ACT (FLSA)
## MISCLASSIFICATION

30.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 29, inclusive, as though set forth fully herein.

31.    Plaintiff is an aggrieved employee under the Fair Labor Standard Act as I was employed by Uber during the applicable time periods mentioned in this civil suit and suffered one or more of the violations pertaining the FLSA. Accordingly, I seek to recover the civil penalties provided by the FLSA plus any other compensation and or punitive damages the court may award Plaintiff.

32.    At all times relevant hereto, Defendants willfully did not treat the payments provided to myself as wages for the purposes of my service as an employee or for applicable tax withholdings.

**33.**   Pursuant to 29 U.S.C. § 207(e), Defendants are statutorily required to include all forms of remuneration in my "regular rate" of pay. Instead I was labeled as an independent contractor by Uber.

**34.**   Defendants suffered or permitted me to work but failed to include all required forms of compensation into the regular rate of pay used to calculate my compensation for services I provided.

**35.**   By failing to include all forms of compensation in the "regular rates" of pay used to calculate my work compensation at the "regular rate" of pay for all monies I earned as required by the FLSA Defendants have violated 29 U.S.C. § 207(e) where they have kept for themselves part of my monies earned for services provided. Defendants have kept approximately $8,263.63 of my money earned.

**36.**   Defendants and their agents and representatives knew or should have known of their obligation to pay me all monies earned for my services rendered at the "regular rate" of pay for all hours worked in accord with the applicable maximum weekly hours established by 29 U.S.C. § 207 of the FLSA.

**37.**   Defendants failure to fully compensate myself for all hours worked have not been in good faith and on reasonable grounds, and were therefore a willful and reckless violation of the FLSA.

**38.**   At all times hereto, Defendants did execute an improper pay scheme/ and or practice as described herein, where the Defendants failed to pay me any compensation at all for each of the hours worked outside of the actual accepted rides sent to me per the Uber app, where unless I secured a ride after my pickup and drop off, Uber refused to pay me for those hours I worked outside of my accepted rides through the Uber app. This action by Defendants violates 29 U.S.C. § 207(a)(1).

**39.**   And where I worked most of the times six or seven days a week at an hourly rate of $14.68 adding up to $117.48 a day $587.40 on a five day week or $822.41 on a seven day week, however, just covering six or seven day weeks the Defendants were obligated to pay me time and a half equaling $22.02 for every hour worked over eight (8) hours which say I worked ten (10) hours which is calculated as

Case 2:19-cv-04242-PD   Document 2   Filed 09/13/19   Page 11 of 37


$117.48 plus $44.04 totaling $161.52 for that day's extra hours, then tallying all extra hours of work for the week bringing it to about $822.41 and for the month $3289.64 or higher.

WHEREFORE, as a result of the foregoing violations of the FLSA as herein enumerated, I seek damages for car maintenance, gas, tickets, kiosk fares which were withheld, waiting time as well as overtime compensation that was earned but unpaid and; also, a treble amount in liquidated damages.

## COUNT II.
## WRONGFUL TERMINATION

**41.**     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 40, inclusive, as though set forth fully herein.

**42.**     In Pennsylvania it is against public policy to misclassify a worker as an independent contractor who is really an employee, it is also against public policy to terminate a person under false pretense such as labeling me as an independent contractor, yet subjecting me to such at-will circumstances as an employee not under contract, under these types of circumstances I am deprived of availing myself by means of employee protections given my designation as an independent contractor.

**43.**     Defendants in approving me to drive for Uber which was Uber X services inserted an arbitration clause which stripped me of any defenses as an employee, and lead me to believe I was in fact an independent contractor restricted to only those remedies outlined in the agreement made between Uber and myself.

**44.**     On a few occasions I got deactivated by Uber for things such as failing to accept three (3) rides in a row or, for unsubstantiated complaints made by passengers, and also when I would call customer service trying to explain certain situations where I needed their help but they would deactivate my

account freezing use of my funds because they felt it may have been fraud (someone else trying to use my account).

**45.**     On June 30, 2018 Defendants without notifying me had deactivated my account which I only learned after me and my wife went to Wild Wood, New Jersey to Uber using our last little bit of money to rent a hotel room for us to stay while we were doing Uber, only to find out almost three (3) hours later that my app had been temporarily deactivated for an alleged complaint made by a passenger that I fell asleep at the wheel and therefore I was restricted from doing Uber until further notice.

**46.**     Because I didn't respond in a timely fashion Uber started a background check in which I had to wait for the results to return before I could began to Uber again, several weeks went by before I was informed that I was permanently prohibited from doing Uber in New Jersey, Delaware, and certain parts of Pennsylvania which apparently were due to the results of my recent background check; I inquired about whether I could do Uber at all and I was told at the Uber Hub that if I consented to another background check I would probably get cleared to Uber in certain parts of Pennsylvania.

**47.**     As I was dissatisfied with Defendants unfair practices I began to research what I could do in my situation, still not having heard back from Uber as to my second background check, searching and searching until I came upon the case of **Lowman v. UC Board of Review,** No. 686 C.D. 2016, Argued: (May 3, 2017) which gave me the understanding to challenge Uber's classification of me as an independent contractor.

**48.**     August 5, 2018 I filed an application for unemployment compensation based on my services performed for Uber, however, on September 11, 2018 my UC claim was denied and I appealed the matter on September 26, 2018 to the UC Referee where a hearing was held on November 21, 2018 and the UC Referee ultimately declared that the services I performed for Uber were performed as an employee but found that my earnings didn't qualify me to receive UC benefits.

**49.**     On December 7, 2019 I filed an appeal with the Unemployment Compensation Board of Review concerning the UC Referee's miscalculations of my Uber earnings, where he failed to subtract the applicable tax withholdings from the net pay of an employee's total earnings, however, the Unemployment Compensation Board of Review didn't deviate from the finding that I rendered services to Uber as an employee and not an independent contractor.

**50.**     Defendants did knowingly and recklessly, in spite of, Pennsylvania making it the law to have proper licensing or an affiliation with a TNC in order to perform ride share services, classify me as an independent contractor who was deactivated under the false presumption that I wasn't entitled to the rights and protections of an employee.

**51.**     Uber does business in multiple States and also provides the authorization for its drivers to perform services in the different States that UberX drivers come into contact with. Uber claims rideshare drivers are independent contractors but it is because of drivers affiliation with Uber that it is possible I was and active drivers are, able to provide services from one State to another without facing penalties. Independent contractors who do business State to State need to secure licensing from that State.

**52.**     By Uber allowing me to operate under their licensing and providing me State to State coverage clearly shows my interstate activity would be illegal without Uber, therefore Uber carries all the characteristics of an employer under the circumstances, thereby making my deactivation as an independent contractor a wrongful termination.

**53.**     Plaintiff for his entire time of working for Uber, was intentionally made to believe he was an independent contractor so that Uber take action against me in a manner inapposite to that of an employee with employee protections, myself and Uber are under contract and an employee under contract cannot be terminated or deactivated "at will."

WHEREFORE, I request judgment against Defendants for back pay including all loss benefits, as well as the interest that would have accrued on said back pay at $3,500 month rate minus what I made with my employer post the wrongful termination plus punitive damages up to $100,000 also any other relief the court may deem appropriate.

## COUNT III.

### RETALIATION

**54.**    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 53, inclusive, as though set forth fully herein.

**55.**    This year in an attempt to file my 2018 taxes I had filed with the IRS what is known as an SS-8 form which seeks to ask the IRS to determine your work status for tax purposes, I filed it around December 2018 or January 2019 then electronically filed my return February 26, 2019.

**56.**    Approximately April 11, 2019 the IRS notified me that my returned was going up for review for sixty (60) days and that I couldn't contact them before then as they would not have an answer as why my return wasn't processed within the normal twenty one (21) days. **Exhibit C**

**57.**    At the end of my sixty (60) days which was approximately around June 11, 2019 I contacted the IRS and I was told that my return was being held up due to my not having submitted any W-2s for Uber.

**58.**    May 16, 2019 I received an IRS SS-8 worker status determination letter identifying the services I had performed for Uber as employee services and, as a result I could either be due a refund, have a reduced tax liability or, owe taxes. **Exhibit D**

59.     Approximately June 13, 2019 I contacted the Tax Advocate Services for assistance and received case # 6876114 and was told I should hear back from them by June 20, 2019, however, I didn't hear from them and I had received another IRS SS-8 determination letter around June 28, 2019.

60.     During July 2019 I made numerous calls to both the IRS SS-8 departments as well as the Tax Advocates office hoping to get my matter resolved, then around July 17, 2019 I finally got through to a Tax Advocate who told me they were planning to call me on the nineteenth (19th) of July and let me know they were going to request that my refund be released from the hold.

61.     No call was made on July 19, 2019, but I did receive a letter around the 24th of July explaining that I needed to submit either W-2s or a letterhead from my employer providing my time of employment. **Exhibit E**

62.     Although Uber was twice made aware that they needed to adjust my previously filed employment tax return, they never corrected my work status and, have even interfered with my wife's unemployment filing and tax filings which is causing us hardships and marital problems.

63.     Because Uber is aware of the corrections to my work and tax records they are responsible for correcting, they have refused to do so, which in turn prevents me from correctly and timely filing my taxes, and their actions have also caused me harm where the delay has caused arguments within my family. **Exhibit F**

64.     Filing an IRS SS-8 worker status form is legal therefore Uber should not be refusing to correct my work status and tax record because I requested a proper work status determination.

        WHEREFORE, I pray the court grants me compensatory damages in the amount $8,500 and punitive damages in the amount of $50,000 plus and other equitable relief the court may grant

WHEREFORE, the Plaintiff prays that upon final judgment he recover both compensatory and punitive damages pursuant to Defendants several violations of State and Federal law as well as any such additional and further relief to which this Plaintiff is entitled.

Date: 9/20/2019

## **VERIFICATION**

I, Reinard Smith, hereby state:

1.   I am the Plaintiff in this action;

2.   I verify that the statements made in in the foregoing Complaint are true and
     correct to the best of my knowledge, information, and belief; and

3.   I declare under penalty of perjury that the foregoing is true and accurate.
     28 U.S.C. 1746.

Reinard Smith

Dated: 9/20/2019

Reinard Smith
In propria persona
46 Bellevue Terrace
Collingswood, NJ 08108
Phone # (609) 222 - 5479



**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW**
Department of Labor & Industry
Commonwealth of Pennsylvania



APPEAL NUMBER  18-09-H-5334
DATE MAILED  11/29/2018
**FINAL DATE
TO APPEAL  12/14/2018**
SSN  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

# REFEREE'S DECISION/ORDER

CLAIMANT

REINARD SMITH
46 BELLEVUE TER
COLLINGSWOOD NJ  08108-1002
US

EMPLOYER

PENN STAFFING SERVICES LLC
100 S BROAD STREET STE 725
PHILADELPHIA PA 19110
US

**CLAIM:**

FILED: 8/5/2018
DETERMINATION/S ISSUED: 9/11/2018   BY:  DUQUESNE UC SERVICE CENTER
    CLAIMANT DETERMINED UNDER UC LAW:   Ineligible   501(e) code 3
    FOR WAITING WEEK ENDING:
    FOR COMPENSABLE WEEK/S ENDING:

**APPEAL:**

FILED: 10/23/2018   BY:  Claimant
HEARING HELD:  11/21/2018   IN:  PHILADELPHIA, PA
    ATTENDED BY:  Claimant, Observer

**ENCLOSURE:**  A translation document UC-1627 is enclosed with this notice.

**FINDINGS OF FACT:**

1. On September 11, 2018, the Duquesne UC Service Center issued a Notice of Financial Determination to the Claimant's last known mailing address, which determined the Claimant financially ineligible for benefits under Section 404 of the Pennsylvania Unemployment Compensation Law.

2. The Notice of Financial Determination contained appeal instructions which indicated to the Claimant the last day to file a timely appeal was September 26, 2018.

3. The Notice of Financial Determination was not returned by the Postal Authorities as being undeliverable.

UC-59 REV 5-09

Claimant — REINARD SMITH                                      Appeal — 18-09-H-5334

4.  The Claimant received the Notice of Financial Determination, and was aware of his appeal rights.

5.  The Claimant filed an appeal with the Pennsylvania Career Link Center on September 26, 2018.

6.  Consequently, the Claimant's appeal is considered timely filed.

7.  For purposes of this appeal, the Claimant filed an application for Unemployment Compensation Benefits, effective August 5, 2018, thereby establishing a base year period from April 1, 2017 to March 31, 2018.

8.  During the base year, the Claimant worked and earned the following wages:

| QUARTER/YEAR | WAGES |
|---|---|
| 2ND/2017 | $0 |
| 3RD/2017 | $342 |
| 4TH/2017 | $3,149.56 |
| 1ST/2018 | $6,383.09 |

9.  The Claimant had a high quarter of $6,383.09 in the 1st quarter of 2018, and total base year wages of $9,874.65.

10. The Claimant had a total of 21 credit weeks in the base year period.

11. The Claimant provided driver services to the Uber Company. The Claimant started his relationship with Uber as of June 2017, until June 30, 2018.

12. On September 7, 2018, the UC Service Center issued a Letter of Explanation Revised Notice of Financial Eligibility: Wage discrepancy, which informed the Claimant that his earnings from Uber would not be considered under Section 4(*l*)(2)(B) of the Pennsylvania Unemployment Compensation Law.

**ISSUE**:  Whether the Claimant's wages from the putative employer are covered and able to be used to establish financial eligibility for benefits.

**REASONING**:  Although duly notified of the date, time and place of the unemployment compensation hearing, the employer failed to appear for the hearing to present testimony and evidence on the issues under appeal.  The above findings represent the competent evidence presented by the claimant, in addition to a careful review of the documentary evidence.

Section 4(ℓ)(2)(B) of the Pennsylvania Unemployment Compensation Law states in relevant part as follows:

Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the department that - (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation,

Claimant — REINARD SMITH                                    Appeal — 18-09-H-5334

profession or business.

Where the Office of UC Service Centers initiates proceedings that result in a suspension of benefits due to self-employment, the Bureau bears the burden of establishing that the claimant was self-employed.  Neither the intent of the parties nor the terminology used by the parties to describe the relationship is dispositive.

The Pennsylvania Courts have held that in employment cases, an individual receiving wages for his services is presumed to be an employee, and the employer bears a heavy burden to overcome that presumption. To overcome this statutory presumption of employment, the employer must show that the individual performed the work free from the employer's control and direction, and that the work was done for others, not just the employer, as part of an independent trade. Unless the employer can show that the employee is not subject to his control and direction and is engaged in an independent trade, occupation or profession, then the worker is an employee.

The Referee would note that in the present case, the Office of UC Service Centers did not appear at the Referee's hearing, and did not request to appear at the Referee's hearing to present testimony and evidence to establish that the Claimant's earnings fall within the provisions of Section 4(*l*)(2)(B) of the Pennsylvania Unemployment Compensation Law, and not to be considered for financial eligibility from a covered Employer.

The Referee finds that as the UC Service Center did not appear at the Referee's hearing, the UC Service Center has not met its burden under Section 4(*l*)(2)(B) of the Pennsylvania Unemployment Compensation Law.

The Referee further finds that there is not competent evidence contained in the record to establish that the Claimant was free from control or direction over the performance of his services under his contract of service and in fact; nor that the Claimant was customarily engaged in an independently established trade, occupation, profession or business.

As the requirements of Section 4(*l*)(2)(B) of the Pennsylvania Unemployment Compensation Law have not been met, the Referee finds that the earnings that the Claimant received from Uber Technologies may be considered under Section 404 of the Pennsylvania Unemployment Compensation Law.

The Referee notes that the Claimant provided earning information for the base year period. The Referee has considered these earnings for the record, and rules accordingly.

Section 404(e) of the Law provides, that the Claimant's whose highest quarterly base year wages amount to $6,383.09, can qualify for a weekly benefit rate of $251, provided the Claimant's total base year wages amount to at least $10,139.

In the present case, the Claimant's total base year wages are $9,874.65, which fall short of the qualifying amount. Therefore, the Referee is constrained to find that the Claimant is financially ineligible for benefits under Section 404(e) of the Pennsylvania Unemployment Compensation Law.

 **Department of the Treasury**
**Internal Revenue Service**
**SB/SE, Compliance**
BIRSC, SS-8 Unit - Stop 631
1040 Waverly Avenue
Holtsville, NY 11742

Reinard Smith
46 Bellevue Terrace
Collingswood, NJ 08108-1002 460

**Date:**
06/25/2019
**Form:**
SS-8
**Person to contact:**
Mary Ellen Vasquez 1023460
**Contact telephone number:**
802-334-0728
**Contact fax number:**
855-242-4484
**Refer reply to:**
Case number 009097
**Firm:**
Uber Technologies Inc

Dear Taxpayer:

We received your request for a determination of employment status, for federal employment tax purposes, concerning the work relationship between you and the firm shown above for the period from 2017 to 2018.

This letter is based solely on the information you provided on Form SS-8, Determination of Worker Status for Purposes of Federal Employment Taxes and Income Tax Withholding. This letter isn't a determination letter and isn't binding on the firm. The sole purpose of this letter is to provide you with assistance in meeting your personal filing requirements.

Based on the information you provided, we conclude that you performed services for the firm as an employee. Typically, an employer withholds taxes from wages it pays to employees and forwards the withheld taxes to the government. This didn't occur in your case. Regardless of whether your employer withholds taxes from you, or you pay taxes directly to the government, you're ultimately liable for your share of social security and Medicare (Federal Insurance Contributions Act) tax and income taxes.

Because of this conclusion, you may be due a refund, you may have a reduced tax liability, or you may owe additional tax. For information on what you should do next, you may obtain a copy of Notice 989, Commonly Asked Questions When IRS Determines Your Work Status is "Employee." The notice is available at www.irs.gov/formspubs or you can call 1-800-TAX-FORM (1-800-829-3676) to have a copy mailed to you.

If you have questions about this decision, you can contact me at the number provided above.

Sincerely,

Joanne Chetuck

Joanne Chetuck
Operations Manager

Enclosure: Notice 989

**Letter 5081 (Rev. 7-2017)**
Catalog Number 60794R

Exhibit

B



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF LABOR AND INDUSTRY
**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW**
LABOR AND INDUSTRY BUILDING
HARRISBURG, PENNSYLVANIA 17121
PHONE: 717-787-5122   FAX: 717-787-6125

BD-58
REV 3/12

SQF

DECISION AND ORDER

| APPEAL NO. | S. S. ACCT. NO. | DECISION NO. | ORDER MAILING DATE |
|---|---|---|---|
| B-18-09-H-5334 | 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 | B-610578 | February 28, 2019 |

| CONCERNING THE CLAIM OF: | EMPLOYER |
|---|---|
| REINARD SMITH<br>46 BELLEVUE TER<br>COLLINGSWOOD NJ 08108 | PENN STAFFING SERVICES LLC<br>100 S BROAD ST STE 725<br>PHILADELPHIA PA 19110 |

| DATE AND NATURE OF REFEREE'S DECISION | DATE OF APPLICATION FOR BENEFITS | WAITING WEEK ENDING DATE |
|---|---|---|
| 11/29/2018: INELIGIBLE, 404(e) | 08/05/2018 | |
| | COMPENSABLE WEEK ENDING DATE(S) | |
| | APPEAL FROM REFEREE'S DECISION FILED BY:<br>Claimant | |

## FINDINGS OF FACT:

1. The claimant was approved to drive for Uber's Uber X services in June 2017 and began actually driving for Uber in October 2017.

2. To drive for Uber, the claimant had to have a driver's license, but no other special license or permit.

3. Pennsylvania law prohibited the claimant from soliciting or accepting a passenger outside a transportation network service.

4. Uber paid the claimant per job based on a fluctuating price structure established by Uber.

5. The claimant was not required to attend meetings.

6. If the claimant decline's more than three rides, he becomes inactive in Uber's system and cannot access the Uber platform until Uber reactivates him in its system.

7. The claimant does not advertise his driver services or perform driving services through other entities.

8. The claimant last worked for Uber on June 30, 2018, when Uber discharged the claimant due to allegations of the claimant being asleep behind the wheel.

REINARD SMITH
B-18-09-H-5334
Page 2

9.  The claimant filed an application for benefits following his separation from employment with Uber.  The claimant's separation is not at issue in this appeal.

10. The claimant's application for benefits with an effective date of August 5, 2018, established a base year consisting of the 2nd, 3rd, and 4th Quarters of 2017 and the 1st Quarter of 2018.

11. During his base year, the claimant earned the following wages:

|  | Employer | Wages |
| --- | --- | --- |
| 2nd Qtr. 2017 |  | $0.00 |
| 3rd Qtr. 2017 | Penn Staffing Services LLC | $342.00 |
| 4th Qtr. 2017 | Uber | $4,762.43 |
| 1st Qtr. 2018 | Uber | $10,093.47 |

12. The claimant had a high quarter of $10,093, and total base year wages of $15,198.

DISCUSSION:  The Department of Labor and Industry (Department) issued a determination denying benefits to the claimant because it determined that the claimant's wages earned while driving for Uber should not be counted in calculating the claimant's financial eligibility because the claimant was self-employed.  The claimant filed an appeal, and following a hearing at which only the claimant appeared and testified, the Referee issued a decision concluding that the claimant was not self-employed; however, despite using the claimant's Uber wages to calculate the claimant's financial eligibility, the Referee affirmed the Department's determination that the claimant was not financially eligible for UC benefits. Thereafter, the claimant filed a further appeal from the Referee's decision.

Section 402(h) of the Law provides that an employee shall be ineligible for compensation for any week in which he is engaged in self-employment.  Section 4($\ell$)(2)(B) of the Law provides that services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the department that--(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

Pennsylvania law prohibited the claimant from soliciting or accepting a passenger outside a transportation network service.  The claimant credibly testified that he does not advertise or offer his driving services independent of using the Uber platform.  The Unemployment

REINARD SMITH
B-18-09-H-5334
Page 3

Compensation Board of Review (Board) concludes that the claimant was not customarily engaged in an independently established trade, occupation, profession or business and, thus, cannot be considered self-employed. Therefore, the claimant's wages from Uber should be used to calculate his financial eligibility.

The Referee in this case appears not to have used the claimant's *gross* wages from Uber in reaching his decision. Therefore, Finding of Fact No. 10 reflects the claimant's gross wages from Uber based on the documents the claimant submitted into evidence. However, even when using the gross wages as set forth in those documents, the claimant is still financially ineligible for benefits.

Section 401(a) of the Pennsylvania Unemployment Compensation Law (Law) provides that compensation shall be payable to any employee who is or becomes unemployed and who has, within his base year, been paid wages for employment as required by Section 404(c) of the Law.

Section 404(c) provides, in effect, for the determination of claimant's financial eligibility in accordance with the table set forth in Section 404(e). Section 404(e) of the Law provides that a claimant whose highest quarterly base year wages amount to at least $10,093.00 can qualify for benefits provided his total base year wages amount to at least $16,051.00. In the instant case, the claimant's total base year wages amount to $15,198.00, which falls short of the qualifying amount and, therefore, the claimant is ineligible to receive benefits under this section of the Law.

Section 404(a)(3) of the Law further provides that a claimant who has insufficient wages to qualify under the provisions of Section 404(e), may qualify for benefits if his base year wages qualify him for any one of the next two lower weekly benefit rates. Since the second lower weekly benefit rate of $395.00 requires total base year wages of $15,972.00, and the claimant's total base year wages are less than this amount, he must be ruled financially ineligible for benefits under the provisions of Section 404(a)(3) of the Law.

CONCLUSION OF LAW: The claimant is financially ineligible for benefits under the provisions of Section 404 of the Law.

ORDER: The decision of the Referee is affirmed and benefits are denied.

# Exhibit

# C



**IRS** Department of the Treasury
Internal Revenue Service

ATSC 4800 Buford Highway
Chamblee GA 30341-0000

In reply refer to: 1487466666
Apr. 11, 2019  LTR 4464C    0
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  201812 30
Input Op: 1483846425 00023893
                    BODC: WI

REINARD SMITH
46 BELLEVUE TERRACE
COLLINGSWOOD  NJ  08108



001007

SSN: 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
Tax year: 2018

Dear TAXPAYER:

We received your income tax return and are verifying its accuracy.

We selected your return to verify one or more of the following you may have reported:

- Income
- Income tax withholding
- Tax credits
- Business income

We'll contact you or your authorized representative if we have questions.

We may also contact third parties if we need to verify information while we're reviewing your return. When we contact third parties, we're prohibited from disclosing any more information than is necessary to verify what we need.

We're required to keep a record of the third-party contacts we've made. You have the right to request a copy of the list of those contacted by writing to the address at the top of this letter.

                    IF YOU FILED THE TAX RETURN

You don't need to do anything at this time. We understand your tax refund is very important to you and we'll work to complete our review as quickly as possible.

We could take up to 60 days to complete this review. Please don't contact us prior to 60 days from the date of this letter, since we won't be able to provide you any additional information. You can check your refund status at www.irs.gov/refunds or the IRS2Go mobile app for smart phones.

Once we finish our review, we may send your refund, ask for additional information, or deny all or part of your refund. If you don't agree with the denial, you'll have an opportunity to appeal.

Exhibit

D



**Department of the Treasury
Internal Revenue Service
SB/SE, Compliance**
BIRSC, SS-8 Unit - Stop 631
1040 Waverly Avenue
Holtsville, NY 11742

Reinard Smith
46 Bellevue Terrace
Collingswood, NJ 08108

**Date:**
05/16/2019
**Form:**
SS-8
**Person to contact:**
Patricia Frintzillas 0095866
**Contact telephone number:**
631-977-4597
**Contact fax number:**
855-234-2604
**Refer reply to:**
Case number 009434
**Firm:**
Uber Technologies

Dear Taxpayer:

We received your request for a determination of employment status, for federal employment tax purposes, concerning the work relationship between you and the firm shown above for the period from 2017 to 2018.

This letter is based solely on the information you provided on Form SS-8, Determination of Worker Status for Purposes of Federal Employment Taxes and Income Tax Withholding. This letter isn't a determination letter and isn't binding on the firm. The sole purpose of this letter is to provide you with assistance in meeting your personal filing requirements.

Based on the information you provided, we conclude that you performed services for the firm as an employee. Typically, an employer withholds taxes from wages it pays to employees and forwards the withheld taxes to the government. This didn't occur in your case. Regardless of whether your employer withholds taxes from you, or you pay taxes directly to the government, you're ultimately liable for your share of social security and Medicare (Federal Insurance Contributions Act) tax and income taxes.

Because of this conclusion, you may be due a refund, you may have a reduced tax liability, or you may owe additional tax. For information on what you should do next, you may obtain a copy of Notice 989, Commonly Asked Questions When IRS Determines Your Work Status is "Employee." The notice is available at www.irs.gov/formspubs or you can call 1-800-TAX-FORM (1-800-829-3676) to have a copy mailed to you.

If you have questions about this decision, you can contact me at the number provided above.

Sincerely,

Joanne Chetuck

Joanne Chetuck
Operations Manager

**Letter 5081 (Rev. 7-2017)**
Catalog Number 60794R

Exhibit

E




**TAXPAYER ADVOCATE SERVICE**

YOUR VOICE AT THE IRS

THE OFFICE OF THE TAXPAYER ADVOCATE OPERATES INDEPENDENTLY OF ANY OTHER IRS OFFICE
AND REPORTS DIRECTLY TO CONGRESS THROUGH THE NATIONAL TAXPAYER ADVOCATE.

July 31, 2019

Reinard Smith
46 Bellevue Ter
Collingswood, NJ 08108-1002

Tax Form(s):  1040
Tax Period(s) Ended:  December 31, 2018
Case Number:  6876114

Dear Mr.  Smith:

I'm writing to let you know that we've closed your case in the Taxpayer Advocate Service.

**What to expect**
Based on your phone message today, you have chosen to deal directly with the Internal
Revenue Service (IRS) regarding the release of your 2018 income tax refund.  Therefore,
your inquiry with the Taxpayer Advocate Service has been withdrawn and closed, per your
request.

**Questions?**
If you have any questions or concerns about the resolution of your case, you can reach
me directly at 631-977-3159.  You can also write to me at the address listed at the bottom
of this letter.

---

Taxpayer Advocate Service
PO Box 960 MS 02
Holtsville, NY 11741
www.irs.gov/advocate

Contact: Diane Du Britz - Employee Number 1000370858
Available Hours: Monday - Friday 7:00 a.m. - 3:30 p.m. EDT
Direct Extension: 631-977-3159, Toll-Free: 866-682-8044
Fax: 855-818-5703, Toll-Free Fax: 888-678-5771

TAS.IAT | IAT TAS Letter 1285(10/2014)



**TAXPAYER ADVOCATE SERVICE**

**YOUR VOICE AT THE IRS**

THE OFFICE OF THE TAXPAYER ADVOCATE OPERATES INDEPENDENTLY OF ANY OTHER IRS OFFICE AND REPORTS DIRECTLY TO CONGRESS THROUGH THE NATIONAL TAXPAYER ADVOCATE.

Thank you for your patience and cooperation while your inquiry was being addressed.  I sincerely apologize for the delay in issuing your refund.

Sincerely,

Diane Du Britz
Case Advocate

Taxpayer Advocate Service
PO Box 960 MS 02
Holtsville, NY 11741
www.irs.gov/advocate

Contact: Diane Du Britz - Employee Number 1000370858
Available Hours: Monday - Friday 7:00 a.m. - 3:30 p.m. EDT
Direct Extension: 631-977-3159, Toll-Free: 866-682-8044
Fax: 855-818-5703, Toll-Free Fax: 888-678-5771

TAS.IAT | IAT TAS Letter 1285(10/2014)

# Exhibit F



<table>
<tr><td>Unemployment Insurance<br>Claims Team<br>UI-claims@uber.com</td><td>Uber Technologies, Inc.<br>1455 Market St, 4th Floor<br>San Francisco, CA 94103</td></tr>
</table>

July 15, 2019

Via Facsimile
Fax: 412-267-1475

Duquesne Service Center
14 North Linden Street
Duquesne, PA 15110

         Re:    Felicia Smith
                 xxx-xx-6125

To Whom It May Concern:

Please be advised that Felicia Smith has never been employed by Uber. Ms. Smith was an independent third-party transportation provider who entered into an agreement as an independent contractor to use Uber's software application ("App"). Ms. Smith determined when she wanted to work and set her own schedule. Ms. Smith could log on to the App as much or as little as she liked and work any hours she chose. In many cases, Uber is only one of several lead generation software applications used by drivers.

First trip completed: 11/10/2016
Last trip completed: 11/09/2018

Payments processed:
Q1_18: $7,582.69; Q2_18: $8,327.07;  Q3_18: $9,940.98; Q4_18: $3,059.99

Please let me know if you have any questions.

Sincerely,

*Unemployment Insurance Claims Team*

Unemployment Insurance Claims Team
UI-claims@uber.com

# ACTION REALTY GROUP

180 Tuckerton Road, Suite 2

Medford, New Jersey 08055

856-872-4100

August 23, 2019

Felicia Smith

46 Bellevue Avenue

Collingswood, NJ 08108

RE: rent due

Dear Ms. Smith:

The following is a reconciliation of your payments made:

| MAY | $1400 | paid 6/5 |
|-----|-------|----------|
| JUNE | $1300 | paid 6/28 |
| JULY | $1000 | paid 7/22 check #103 |
| JULY | $1400 | paid 7/26 check #104 |
| AUGUST | $1000 | paid 8/2 check#105- CHECK RETURNED NSF 8/9 |

Please be advised:

1- Please replace NSF check with certified check or money order (all future payments must be made by certified check or money order; no more personal checks will be accepted) no later than 8/31/19;
2- If your account is not current as of 9/1/19, we will pursue further legal action, and you will be subject to additional late fees, legal fees and costs.

Thank you for your immediate attention and cooperation in this matter..

Very truly yours,

ACTION REALTY GROUP

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW
Department of Labor & Industry
Commonwealth of Pennsylvania

UC-53(5) 12-07



| | |
|---|---|
| APPEAL NUMBER | 19-09-H-3692 |
| DATE MAILED | September 9, 2019 |
| SSN | 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 |

# NOTICE OF CONTINUANCE OF HEARING

CLAIMANT

EMPLOYER

FELICIA SMITH
46 BELLEVUE TERRACE
COLLINGSWOOD NJ  08108

UBER TECHNOLOGIES INC
1455 MARKET STREET
SAN FRANCISCO CA 94103

— Notice is hereby given to those identified above that a hearing which had been scheduled as follows—

Jay Apfelbaum
Tuesday
9/17/2019
3:00 PM
Eastern Time

at **PHILADELPHIA REFEREE OFFICE**

on an appeal pending before the Unemployment Compensation Board of Review *has been continued*.

When another hearing is scheduled, each party will receive advance notice of its date, time and location.

A translation document UC-1627 is enclosed with this notice.

A return post card regarding translation UC-53P is enclosed with this notice.

**Auxiliary aids and services are available upon request to individuals with disabilities.**
**Equal Opportunity Employer/Program**